# STATE OF MICHIGAN

# COURT OF APPEALS

In re FRAZIER, Minors.

UNPUBLISHED
January 12, 2017

No. 332971
Wayne Circuit Court
Family Division
LC No. 14-515781-NA

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

Respondent appeals as of right from the trial court order terminating her parental rights to the minor twin children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

On appeal, respondent argues that the trial court's factual findings with regard to MCL 712A.19b(3)(c)(*i*), (g) and (j) were clearly erroneous. Respondent also contends that the trial court erred in concluding that termination of respondent's parental rights was in the children's best interests. We disagree.

We review for clear error the trial court's finding that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013). Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's decision regarding the child's best interests is also reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A finding is clearly erroneous "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2005) (citation and internal quotation marks omitted).

Respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provides, in pertinent part, as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

-1-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err in finding that there was clear and convincing evidence to support termination of respondent's parental rights to the minor twin children under MCL 712A.19b(3)(c)(*i*). Respondent is disabled, and while the specific nature of her incapacity is unclear from the record, it appears that she is indeed legally incapacitated, and has both short-term and long-term memory loss. During her pregnancy with the minor twin children, respondent had been in a coma for 8½ months, and she testified that her coma resulted from having a substance "slipped" to her. Since becoming disabled, respondent has required a legal guardian.

When the initial petition seeking termination of respondent's parental rights was filed, respondent's mother was her guardian and respondent and the twin minor children resided with respondent's mother. The minor children were removed from respondent's custody in 2014 after the seven-week-old female twin was found to have a fractured femur in February 2014, and medical personnel concluded that the injury was inconsistent with the explanations respondent and her mother gave during interviews. According to medical personnel, the femur fracture was consistent with physical abuse. Additionally, after hearing evidence on the issue, the trial court found that the injury did not result from an accident. Moreover, the male twin, born with spina bifida, was hospitalized contemporaneously for failure to thrive. Instead of terminating respondent's parental rights, the court took temporary custody of the minor children and gave respondent the opportunity to participate in a treatment plan and demonstrate that she could care for her children.

Respondent's treatment plan required respondent to find suitable housing, demonstrate a legal source of income and participate in specialized parenting classes to attend to a child with spina bifida, as well as a catheterization class. Respondent was also required to have a psychological assessment, obey court orders, attend visitation with her children, and maintain

contact with the foster care specialist. The final termination hearing was held almost two years after the issuance of the initial dispositional order.[1] At the time, respondent had not substantially complied with the treatment plan. While the foster care specialist's best efforts were unsuccessful in securing specialized parenting classes for respondent because of local unavailability, the trial court ordered respondent to participate in regular parenting classes, and she was terminated from that class for nonattendance. Respondent was re-referred to parenting classes and, while she had started to participate, as of March 25, 2016, respondent had completed only 5 out of 14 classes. Respondent was assigned a parent partner, but that relationship broke down after she and her parent partner mutually agreed that they could not work together. Respondent was to be provided Infant Mental Health (IMH) services, but the record reflects that she overslept and missed the initial assessment. While the facility offering the IMH services was unable to make contact with respondent to reschedule, a review of the record confirms that respondent had the contact information but did not follow up herself.

Moreover, respondent was referred for counseling and for psychiatric treatment. She was on the verge of termination from both these services for missed appointments, but when the supplemental termination petition seeking termination of her parental rights was filed respondent resumed these appointments. Respondent had also consistently missed medication reviews, and it was unclear, as of April 20, 2016, if she was compliant with taking her prescription medication. Respondent was also referred to the Mothers Group, a mentoring program from Homes for Black Children, and they helped and supported respondent in several ways, including helping her look for suitable housing. However, before the filing of the supplemental termination petition, respondent had been removed from the mentoring program due to disrespectful and deceitful behavior. Respondent also did not have suitable housing for the twins. At some point in the lower court proceedings, respondent's mother's guardianship was terminated, and respondent's father became her legal guardian. After exploring other housing options, respondent moved into her father's apartment, which the foster care specialist determined not to be a suitable home for the minor children because it was unsafe. Respondent also never produced proof of legal income. While the record reflects that respondent attended the majority of scheduled visits with her children and that she shared a healthy bond with them, respondent often made poor decisions in bringing inappropriate treats for the children, including coffee and candy, and was unable to manage both children without supervision. Therefore, respondent had never progressed to unsupervised visitation with her children.

Respondent had taken a catheterization class and was performing necessary catheterization on the male twin during her Monday visitation with the children. The male twin requires the procedure five times a day. However, as of March 25, 2016, the foster care specialist had observed respondent perform the catheterization process, noting that respondent still required verbal directions and was not confident in her performance. Moreover, the male child also required medications and services to the extent that the foster parents had hired a full-time caregiver. Respondent had failed to attend several of her son's medical appointments in the

---

[1] The order of disposition was entered August 25, 2014, and the final termination hearing was held May 2, 2016. The order terminating respondent's parental rights was entered May 3, 2016.

six months before the termination hearing. The foster care specialist also expressed concern during her testimony that respondent failed to fully appreciate the severity of the male child's needs and the serious long-term care that he would require.

A review of the record also confirms that respondent did not have adequate support to help care for her children. Respondent's father, her guardian at most points during the lower court proceedings, had initially refused to learn how to perform the catheterization in spite of a court order requiring that he do so. As of April 20, 2016, respondent's father had not yet attempted to perform a catheterization. While respondent's father had completed parenting classes and attended visitation with the children sporadically, while with the children he did little more than observe and was not engaged or helpful. Although respondent's friend testified that she was qualified to perform catheterizations and she would help respondent care for the children, the friend had a child of her own and her own employment responsibilities, which required her to place her own child in the care of others while she worked. Notably, the trial court in its ruling questioned whether this friend could give respondent adequate support. The foster care specialist had looked into other relatives of respondents for support, concluding they were unsuitable for various reasons. There was record evidence confirming that respondent required someone to be there to supervise and help her at all times with the children. Accordingly, it was clear that respondent did not have the necessary support to provide proper care or custody for the children. At the termination hearing, respondent contended that she did not need a guardian but admitted that she forgot appointments and forgot to take her medicine without her father to remind her. In addition, a September 11, 2015 psychiatrist evaluation, admitted into the record as an exhibit, concluded that respondent's prognosis for independent parenting of the children was "guarded[.]"

On the basis of the evidence set forth above, we conclude that the trial court did not clearly err in finding clear and convincing evidence that the conditions that led to the adjudication continued to exist, and there was no reasonable expectation that they would be rectified within a reasonable time considering the age of the children. In addition, the same facts provide clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j). A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App at 710-711. Therefore, the trial court did not clearly err in finding clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g) and (j).

The trial court also did not clearly err in finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests. MCL 712A.19b(5); *In re Laster*, 303 Mich App at 496. In deciding whether termination is in the child's best interests, the court may consider the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the child's bond to the parent, *In re BZ*, 264 Mich App at 301, the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011), and whether the parent can provide "a permanent, safe, and stable home[.]" *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Once statutory grounds for termination are established, the best interests of the child in having "a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App at 89 (citation omitted).

A review of the record confirmed that respondent shared a healthy bond with her children, that she attended the majority of visitations with them and was generally appropriate and caring with them. However, respondent had not satisfactorily completed parenting classes after multiple attempts, had not followed through with IMH services, and her compliance with her own counseling, psychiatric care and prescription medication reviews was irregular. Additionally, respondent had not secured suitable housing, was unable to provide documentation of a legal source of income, and was not able to independently perform a serious medical procedure for her son, who had significant special needs. Respondent had also not regularly attended necessary medical appointments for her son. The record also confirmed that respondent did not have the necessary support to properly care for her children and to meet their needs. During the termination hearing, the trial court observed that respondent's father's guardianship over her had been terminated, and there was no indication that another guardianship for respondent was put in place. Respondent simply could not provide a permanent, safe, and stable home for the children. Meanwhile, the record confirmed that the foster parents were providing a safe and secure home for the children, they were thriving in foster care, and the foster parents had expressed a desire to adopt the children. Under these circumstances, the record evidence amply supported the trial court's conclusion that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto